**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:21-cr-20179-KMM

UNITED STATES OF AMERICA

v.

AGUSTIN VICENTE SUAREZ
CHOMPOL, *et al.*,

    Defendants.
_____ /

**REPORT AND RECOMMENDATIONS**

    **THIS CAUSE** is before the Court on Defendant Agustin Suarez Chompol's Motion to Withdraw Plea and Dismiss Indictment (ECF No. 68), Defendant Julio Cesar Quinones Calzada's Motion to Withdraw Plea and Dismiss Indictment (ECF No. 73), and Defendant Jorge Santiago Acosta Chiquito's Motion for Reconsideration of Order Denying Motion to Dismiss the Indictment for Lack of Jurisdiction (ECF No. 69). The Government filed a response in opposition to the Motions. (ECF No. 74). Defendants filed replies. (ECF Nos. 84, 88). The Motions were referred to the undersigned by the Honorable K. Michael Moore, United States District Judge, to take all necessary and proper action as required by law and/or to submit a Report and Recommendation. (ECF No. 104). On July 29, 2022, the undersigned held a Status Conference to determine if any movant sought a hearing on any motion. (ECF No. 107). Upon consideration of the Motions, Responses, Replies, the Parties' supplemental authorities and objections thereto (ECF Nos. 87, 96, 97), a review of the record, and being otherwise fully advised in the premises, the undersigned respectfully **RECOMMENDS** that the Motions to Withdraw Pleas and Dismiss the Indictment (ECF Nos. 68, 73) and the Motion for Reconsideration (ECF No. 69) be **DENIED**.

**I.     BACKGROUND**

This criminal prosecution alleges violations of the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. §§ 70501–70508. On March 23, 2021, a grand jury sitting in the Southern District of Florida returned an Indictment charging Defendants Agustin Vicente Suarez Chompol, Julio Cesar Quinones Calzada, and Jorge Santiago Acosta Chiquito (collectively, "Defendants") with (1) conspiracy to possess with intent to distribute 5 kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a)(1), 70506(b) and 21 U.S.C. § 960(b)(1)(B) ("Count I"), and (2) possession with intent to distribute the same while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a)(1), 18 U.S.C. § 2, and 21 U.S.C. § 960(b)(1)(B) ("Count II"). (ECF No. 4).

The charges arose from a maritime drug trafficking interdiction.[1] On March 9, 2021, a U.S. Marine Patrol Aircraft ("MPA") detected a go-fast vessel ("GFV") located approximately 210 nautical miles southwest of Isla de Coiba, Panama in international waters and upon the high seas. Three individuals were observed aboard the GFV with no apparent indicia of nationality and a large number of fuel barrels on the deck, all in a known drug trafficking area. The three individuals pulled their hoods over their faces upon detection by the MPA. Consequently, a U.S. Coast Guard cutter was directed to intercept the GFV.

A U.S. Coast Guard boarding team encountered the three individuals on the GFV, later identified as Defendants. Quinones Calzada was identified as the master of the GFV;[2] he refused to make a claim of nationality for the vessel, but identified the GFV's last port of call as

---

[1] The following facts are drawn from Defendants' Factual Proffers (ECF Nos. 61, 63, 65), and are described solely to present the events that led to Defendants' arrest and prosecution in the United States.
[2] Although, Acosta Chiquito appears to dispute that any of the three Defendants identified themselves as the master of the vessel. *See* (ECF No. 61) at 2; (ECF No. 75) at 25:14–26:14.

Esmeraldas, Ecuador. A check of the GFV yielded Ecuadorian registration documents, and the information contained therein was consistent with the identification numbering and flag painted on the sides of the GFV's hull. However, the Government of Ecuador could neither confirm nor deny the nationality of the vessel when contacted. As a result, the GFV was treated as a vessel without nationality. Law enforcement boarded the GFV and recovered approximately 674 kilograms of cocaine, as confirmed by field testing.

On October 11, 2021, Acosta Chiquito moved to dismiss the Indictment for lack of subject matter jurisdiction. (ECF No. 30). His motion argued that (1) the GFV was stopped and Acosta Chiquito was arrested within Panama's Exclusive Economic Zone ("EEZ"), not within international waters or on the high seas, and therefore his prosecution exceeded the Government's statutorily authorized jurisdiction under the MDLEA, and (2) the Government failed to establish the GFV was a "vessel without nationality" under the MDLEA. Separately, Acosta Chiquito moved to dismiss the Indictment on Fifth Amendment due process grounds as a sanction against the Government for destroying the GFV's registration documents without reason and without making copies, thereby destroying potential exculpatory evidence.

On January 13, 2022, the Honorable Marcia G. Cooke, United States District Judge, held a hearing on Acosta Chiquito's motion to dismiss. (ECF No. 53). At the hearing, Acosta Chiquito argued that the Government failed to identify, and establish a factual basis for, the specific statutory provision pursuant to which the Government determined the GFV was a "vessel subject to the jurisdiction of the United States," noting that the Government appeared to be improperly proceeding under two of the six statutory bases of jurisdiction: (1) that the GFV was "a vessel without nationality" under § 70502(c)(1)(A), and (2) that the GFV was "a vessel registered in a foreign nation if that nation has consented or waived objection to the enforcement of United States law by the United States" under § 70502(c)(1)(C). In response, Government counsel confirmed

that the Government was proceeding under the theory that the GFV was "a vessel without nationality" under § 70502(c)(1)(A). *See* (ECF No. 75) at 20:14–18. The Government argued that the GFV was a vessel without nationality under that provision of the MDLEA in two respects: (1) under § 70502(d)(1)(B) because the master of the vessel made a claim of nationality for himself and not the GFV; and (2) under § 70502(d)(1)(C) because the claimed nation of registry, Ecuador, did not affirmatively and unequivocally assert that the GFV is of its nationality.

Acosta Chiquito's motion was denied in open court at the conclusion of the hearing. (ECF No. 53); (ECF No. 75) at 34:14–15. The same day as the hearing on Acosta Chiquito's motion, Defendants pled guilty to Count I of the Indictment, on January 13, 2022.[3] (ECF Nos. 54, 62, 63, 65).

However, on January 20, 2022, shortly after Defendants pled guilty, the First Circuit issued a decision holding that § 70502(d)(1)(C) is unconstitutional. *See United States v. Davila-Reyes*, 23 F.4th 153, 186–95 (1st Cir.), *reh'g en banc granted, opinion withdrawn*, 38 F.4th 288 (1st Cir. 2022). There, the First Circuit expressly held that "Congress exceeded its authority under Article I of the Constitution in enacting § 70502(d)(1)(C) of the MDLEA" because that "provision expands the definition of a 'vessel without nationality' beyond the bounds of international law and thus unconstitutionally extends U.S. jurisdiction to foreigners on foreign vessels." *Id.* at 157–58. This decision has since been withdrawn; on July 5, 2022, the First Circuit entered an order withdrawing *Davila-Reyes*, vacating the judgment, and setting the matter for rehearing *en banc*. *See United States v. Davila-Reyes*, 38 F.4th 288 (1st Cir. 2022) (Mem.).

---

[3] On July 21, 2022, the case was reassigned to the Honorable K. Michael Moore, United States District Judge. (ECF No. 102). Defendants are scheduled for sentencing before Judge Moore on September 28, 2022. (ECF No. 106).

In March of 2022 during the intervening period between when *Davila-Reyes* was issued and when it was withdrawn, Defendants filed their Motions.[4] Both Suarez Chompol and Quinones Calzadas seek to withdraw their guilty pleas so that they may move to dismiss the Indictment in light of *Davila-Reyes*; their Motions present the arguments they would make on a motion to dismiss the Indictment for lack of subject matter jurisdiction. Acosta Chiquito seeks reconsideration of the district court's order denying his motion to dismiss the Indictment on the grounds that *Davila-Reyes* is a "significant and 'intervening change in controlling law.'" (ECF No. 69 at 1).

## II.   DISCUSSION

This is one of many cases in this District challenging the constitutionality of § 70502(d)(1)(C) of the MDLEA in light of the now-withdrawn First Circuit decision *United States v. Davila-Reyes*, 23 F.4th 153 (1st Cir. 2022). *See United States v. Rodriguez et al.*, No. 22-20080-CR-Altman, 2022 WL 3356632, at *10 n.9 (S.D. Fla. Aug. 15, 2022) (collecting cases and observing that "Westlaw shows fifteen cases citing to *Dávila-Reyes II*. Of those fifteen, eleven are decisions from judges in our Circuit who've refused to follow *Dávila-Reyes II*."). The Court first takes up Suarez Chompol's and Quinones Calzada's Motions to Withdraw Plea and Dismiss Indictment (ECF Nos. 68, 73) before turning to Acosta Chiquito's Motion for Reconsideration (ECF No. 69).

### A.   Motions to Withdraw Plea and Dismiss Indictment

Suarez Chompol and Quinones Calzada seek to withdraw their guilty pleas so that they may move to dismiss the Indictment based on the intervening First Circuit decision entered in

---

[4] Suarez Chompol's Motion to Withdraw Plea and Dismiss Indictment (ECF No. 68) and Acosta Chiquito's Motion for Reconsideration (ECF No. 69) were both filed on March 8, 2022. Quinones Calzada's Motion to Withdraw Plea and Dismiss Indictment (ECF No. 73) was filed on March 11, 2022.

*Davila-Reyes*. As set forth below, I find that withdrawal of their pleas is not warranted because a motion to dismiss the Indictment on the grounds they advance would ultimately not succeed.

### 1. Withdrawal of Guilty Pleas Is Not Warranted

In support of their requests to withdraw their guilty pleas, Suarez Chompol and Quinones Calzada assert that the issuance of the First Circuit's decision *Davila-Reyes*, holding that § 70502(d)(1)(C) of the MDLEA is unconstitutional, presents a "fair and just reason for requesting the withdrawal" under Federal Rule of Criminal Procedure 11(d)(2)(B).

A criminal defendant may withdraw a guilty plea after the court accepts it but before it imposes a sentence if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B); *see also United States v. Williams*, 803 F. App'x 379, 380 (11th Cir. 2020) ("There is no absolute right to withdraw a guilty plea."). Courts make this determination by considering the "totality of the circumstances surrounding the plea," including "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." *United States v. Chicago*, 711 F. App'x 512, 515 (11th Cir. 2017); *see also United States v. Buckles*, 843 F.2d 469, 471–72 (11th Cir. 1988)). However, courts need not give the third and fourth factors considerable weight when a defendant fails to show that the first two favor withdrawal. *United States v. Sheppard-Lewis*, 820 F. App'x 974, 979 (11th Cir. 2020). "The defendant carries the burden to show a fair and just reason for withdrawal of his plea." *United States v. Midkiff*, 806 F. App'x 678, 680 (11th Cir. 2020).

Here, Suarez Chompol's and Quinones Calzada's Motions assert only that permitting them to withdraw their guilty pleas is fair and just in light of the now-withdrawn First Circuit decision in *Davila-Reyes*. To that end, their Motions provide the Court with the arguments that they would

6

make in a motion to dismiss the Indictment if permitted to withdraw their pleas. Suarez Chompol's and Quinones Calzada's Motions do not, however, present any discussion directed at the factors identified above, which the Court must consider in assessing the totality of the circumstances surrounding their pleas. Rather, and as set forth below, I find that the arguments Suarez Chompol and Quinones Calzada would advance in a motion to dismiss the Indictment would ultimately fail, and thus permitting them to withdraw their guilty pleas is not warranted at this posture.

### 2.      Dismissal of the Indictment Would Ultimately Fail

Suarez Chompol's and Quinones Calzada's arguments in favor of dismissing the Indictment draw heavily from an intervening First Circuit decision that has since been withdrawn and set for rehearing *en banc*; they assert that § 70502(d)(1)(C) of the MDLEA is facially unconstitutional. (ECF Nos. 68, 73) (citing *United States v. Davila-Reyes*, 23 F.4th 153 (1st Cir. 2022)). According to Suarez Chompol and Quinones Calzada, § 70502(d)(1)(C) permits the United States to deem vessels stateless, and therefore without nationality and subject to the jurisdiction of the United States, when the master or individual in charge of that vessel makes a claim of nationality that is neither confirmed nor denied by the respective nation. They argue that this grant of statutory authority runs counter to international law, which recognizes a prima facie showing of nationality based on such assertions made by the master of the vessel, and which is incorporated into the Felonies Clause of the Constitution. Consequently, Suarez Chompol and Quinones Calzada argue that because § 70502(d)(1)(C) permits the United States to deem stateless a vessel that would be a vessel with nationality under customary international law, § 70502(d)(1)(C) violates the Felonies Clause of the Constitution. Thus, if permitted to withdraw their guilty pleas, Suarez Chompol and Quinones Calzada would argue that the Court must dismiss the Indictment for want of constitutional subject matter jurisdiction, as the enactment of § 70502(d)(1)(C) of the MDLEA exceeded Congress's constitutional grant of authority.

7

*a.     Legal Standard*

Federal Rule of Criminal Procedure 12(b) governs motions to dismiss an indictment. Fed. R. Crim. P. 12(b). "[A] defendant may challenge an indictment on a variety of . . . grounds, including for failure to state an offense, lack of jurisdiction, double jeopardy, improper composition of the grand jury, and certain types of prosecutorial misconduct." *United States v. Kaley*, 677 F.3d 1316, 1326 (11th Cir. 2012). Motions attacking a defect in instituting the prosecution or in the indictment itself, among other bases, must be made prior to trial. Fed. R. Crim. P. 12(b)(3). Where a criminal defendant moves to dismiss an indictment because the court lacks jurisdiction, they may do so "at any time while the case is pending." Fed. R. Crim. P. 12(b)(2). While an indictment may be dismissed where there is an infirmity of law in the prosecution, a court may not dismiss an indictment on a "determination of facts that should have been developed at trial." *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987). "The sufficiency of a criminal indictment is determined from its face." *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992).

*b.     MDLEA and the Felonies Clause*

The U.S. Constitution grants Congress the power "[t]o define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." U.S. Const. art. I, § 8, cl. 10. The United States Supreme Court has interpreted this clause to contain three distinct grants of power: "(1) 'the power to define and punish piracies' (the Piracies Clause); (2) 'the power to define and punish felonies committed on the high seas' (the Felonies Clause); and (3) 'the power to define and punish offenses against the law of nations,' (the Offences Clause)." *United States v. Macias*, 654 F. App'x 458, 460 (11th Cir. 2016).

Pursuant to this grant of authority under the Felonies Clause, Congress enacted the MDLEA which "establishes the framework for the United States to prosecute citizens of any

8

country for drug crimes committed in international waters." *United States v. Guerro*, 789 F. App'x 742, 744 (11th Cir. 2019); *see also Macias*, 654 F. App'x at 460 ("[T]he MDLEA broadly prohibits drug trafficking on any vessel subject to the jurisdiction of the United States even if 'the act is committed outside the territorial jurisdiction of the United States.'"). As relevant here, the MDLEA makes it a federal crime for "any person 'on board a covered vessel . . . [to] knowingly or intentionally manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance.'" *United States v. Berroa*, No. 21-20359-CR-Scola, 2022 WL 1166535, at *2 (S.D. Fla. Apr. 20, 2022) (quoting 46 U.S.C. § 70503(a)) (citing *United States v. Estupinan*, 453 F.3d 1336, 1338 (11th Cir. 2006)). Further, a "covered vessel" is a "vessel subject to the jurisdiction of the United States," which is further defined to include "a vessel without nationality." 46 U.S.C. §§ 70502(c)(1)(A), 70503(e)(1).

Under the MDLEA, a vessel without nationality includes: (A) "a vessel aboard which the master or individual in charge makes a claim of registry that is denied by the nation whose registry is claimed"; (B) "a vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel"; and (C) "a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." 46 U.S.C. § 70502(d)(1)(A)–(C).

      *c.  Analysis*

With respect to § 70502(d)(1)(C), the Court does not agree with the characterization of this issue as one of first impression in this Circuit. *See* (ECF No. 68 at 8); (ECF No. 73 at 5). Rather, as other cases in this District have noted, the Eleventh Circuit recognized in *United States v.*

9

*Macias* that Congress's grant of power under the Felonies Clause is not subject to the limits of customary international law, pointing to the following language:

> Macias contends that under *Bellaizac–Hurtado* 's reasoning, the term "define" in the Piracies and Felonies Clause limits Congress's authority under all three clauses to violations of customary international law. Thus, a court has jurisdiction over felonies committed onboard a stateless vessel on the high seas only if Congress has the power to "define" that crime as a felony under customary international law.
>
> Macias misreads *Bellaizac–Hurtado*. The Court in *Bellaizac–Hurtado* reasoned that it was the terms that follow "define" (*i.e.*, "Piracies," "Felonies committed on the high Seas," and "against the Laws of Nations") that narrow Congress's authority. *See id.* at 1249. *And, unlike the Offences Clause, the Felonies Clause is not narrowed by the language "against the Laws of Nations." See* U.S. Const., art. I, § 8, cl. 10. *Bellaizac–Hurtado*'s discussion of the meaning of the word "define" as it pertains to the Offences Clause does not support Macias's argument as to the Felonies Clause. Furthermore, the interpretation of the Felonies Clause Macias urges upon us conflicts with this Court's long-standing precedent that "the assertion of jurisdiction over stateless vessels on the high seas in no way transgresses recognized principles of international law." *See Marino–Garcia*, 679 F.2d at 1382.

*Macias*, 654 F. App'x at 461; *see United States v. Eusebio et al.*, No. 21-20580-CR-Gayles/Torres, 2022 WL 3448675, at *4 (S.D. Fla. July 27, 2022), *report and recommendation adopted*, No. 1:21-CR-20580-Gayles/Torres, 2022 WL 3445204 (S.D. Fla. Aug. 17, 2022) (explaining that Defendants' arguments are foreclosed by *Macias*, which "squarely refused to conflate the international law limitations found in the Offences Clause with the relatively broader scope of power embodied in the Felonies Clause"); *United States v. Caraballo*, No. 21-20581-CR-Gayles/Torres, 2022 WL 2160699, at *3 (S.D. Fla. May 12, 2022), *report and recommendation adopted*, No. 21-CR-20581-Gayles/Torres, 2022 WL 2158732 (S.D. Fla. June 15, 2022) (same); *United States v. Grueso*, No. 21-20486-CR-Gayles/Torres, 2022 WL 1650098, at *3 (S.D. Fla. May 2, 2022), *report and recommendation adopted*, No. 1:21-CR-20486-Gayles/Torres, 2022 WL 1641904 (S.D. Fla. May 23, 2022); *see also Rodriguez*, 2022 WL 3356632, at *10 ("[T]he Felonies Clause isn't cabined by international law."); *United States v. Pierre*, No. 21-CR-20450-Altman, 2022 WL 3042244, at *11 (S.D. Fla. Aug. 1, 2022) (same).

Rather, as argued by the Government and noted in numerous, similar cases rejecting arguments identical to those made in this case, the Eleventh Circuit has twice upheld the MDLEA as a constitutional exercise of Congress's power under the Felonies Clause. *See United States v. Mendez*, No. 21-CR-20579-Bloom, 2022 WL 1202889, at *4–5 (S.D. Fla. Apr. 21, 2022) (citing *United States v. Hernandez*, 864 F.3d 1292 (11th Cir. 2017); *United States v. Campbell*, 743 F.3d 802 (11th Cir. 2014)) (noting that the Eleventh Circuit twice upheld the enactment of the MDLEA under the Felonies Clause); *United States v. Barros*, No. 21-CR-20438-Bloom, 2022 WL 1135707, at *4 (S.D. Fla. Apr. 18, 2022) (same); *Eusebio*, 2022 WL 3448675, at *5 (same); *United States v. Waters*, No. 21-20582-CR-Scola, 2022 WL 1224728, at *2 (S.D. Fla. Apr. 26, 2022) (same); *United States v. Aguilar-Hurtado et al.*, No. 22-20050-Altonaga, (S.D. Fla. May 5, 2022), Order (ECF No. 38) at 6.

In any event, a withdrawn opinion of the First Circuit is not binding on this Court, *see, e.g.*, *Waters*, 2022 WL 1224728, at *2) ("[T]his Court is bound by the Eleventh Circuit, not the First Circuit."), and this Court declines to recommend that the district court declare part of the MDLEA unconstitutional and dismiss the Indictment based on withdrawn, nonbinding precedent. That *Davila-Reyes* has been withdrawn further diminishes the persuasive value of its reasoning. *See Rodriguez*, 2022 WL 3356632, at *10 & n.9 (noting that "now that the First Circuit has withdrawn *Dávila-Reyes II*, there are no cases, *anywhere in the country*, that take the Defendants' view" and collecting cases) (emphasis in original); *Pierre*, 2022 WL 3042244, at *11 & n.11 (same).

Moreover, and as the Government argues, even assuming Congress's authority under the Felonies Clause is cabined by international law, the extraterritorial application of the MDLEA is supported by the "protective principle" of international law, "which permits a nation to assert jurisdiction over a person whose conduct outside the nation's territory threatens the nation's security or could potentially interfere with the operation of its governmental functions." *United*

11

*States v. Gonzalez*, 776 F.2d 931, 938 (11th Cir. 1985). As has been explained in numerous cases addressing arguments identical to those made here,

> the Eleventh Circuit has repeatedly permitted the United States to assert jurisdiction over foreign nationals trafficking drugs on the high seas by referencing the United States' rights under the protective principle of international law. *See, e.g.*, *Tinoco*, 304 F.3d at 1108; *Persaud*, 605 F. App'x at 795. Therefore, even if the Felonies Clause is bound by international law, Eleventh Circuit precedent establishes that the MDLEA does not contravene international law and is instead appropriately based on the protective principle of international law. In other words, Eleventh Circuit precedent establishes that Congress did not overstep its authority in enacting the MDLEA under the Felonies Clause by violating international law because the protective principle of international law permits MDLEA's conferral of jurisdiction over vessels whose nationality cannot be confirmed.

*Barros*, 2022 WL 1135707, at *5; *see also Berroa*, 2022 WL 1166535, at *3; *Grueso*, 2022 WL 1650098, at *6; *Mendez*, 2022 WL 1202889, at *3 (S.D. Fla. Apr. 21, 2022); *Pierre*, 2022 WL 3042244, at *7–8; *Waters*, 2022 WL 1224728, at *3; *United States v. Martinez et al.*, No. 22-20040-cr-Martinez, (S.D. Fla. May 9, 2022), Order on Motion to Dismiss Indictment (ECF No. 28) at 7–8.

To the extent Defendants' Joint Reply argues the charged offenses did not occur on the "high Seas" because they were arrested in Panama's EEZ (ECF No. 88 at 9–11), the argument is an as-applied challenge to subject matter jurisdiction that was not raised in Suarez Chompol's and Quinones Calzada's Motions as one that would be advanced in support of a motion to dismiss the Indictment.[5]

For all these reasons, because Suarez Chompol's and Quinones Calzada's requests to dismiss the Indictment would ultimately fail, I recommend that the Motions (ECF Nos. 68, 73) be denied.

---

[5] Acosta Chiquito raised this argument in his Motion to Dismiss Indictment for Lack of Jurisdiction. (ECF No. 30 at 8–9); *see also* (ECF No. 69 at 5). However, as discussed further below, the argument advanced in Acosta Chiquito's Motion for Reconsideration is limited to the argument that the now-withdrawn First Circuit decision *Davila-Reyes* compels a finding that § 70502(d)(1)(C) is facially unconstitutional because it permits the United States to deem a vessel stateless when it would otherwise have nationality under international law, in violation of the Felonies Clause.

### 3. Motion for Reconsideration

Last, the Court considers Defendant Acosta Chiquito's Motion for Reconsideration (ECF No. 69). As noted above, on January 13, 2022, the district court held a hearing and denied Defendant Acosta Chiquito's Motion to Dismiss the Indictment for Lack of Jurisdiction on the record. (ECF No. 53); *see also* (ECF No. 75 at 34:14–15).

Reconsideration is an "an extraordinary remedy to be employed sparingly." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1370 (S.D. Fla. 2002). Reconsideration is justified in three instances: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice. *In re Managed Care Litig.*, Nos. MDL 1334, 00–1334–MD–MORENO, 2002 WL 1359734, at *1 (S.D. Fla. June 11, 2002). "[A] motion for reconsideration cannot be used to relitigate old matters, raise arguments, or present evidence that could have been raised prior to the entry of judgment, including new arguments that could have been raised but were not." *United States v. Gossett*, 671 F. App'x 748, 749 (11th Cir. 2016). "A party's disagreement with the court's decision, absent a showing of manifest error, is not sufficient to demonstrate entitlement to relief." *United States v. Dean*, 838 F. App'x 470, 471–72 (citing *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1344 (11th Cir. 2010)).

As noted above and confirmed in Acosta Chiquito's Reply (ECF No. 84), the Motion for Reconsideration is predicated on the intervening issuance of the First Circuit decision in *Davila-Reyes*. For the same reasons as those described above warranting denial of his co-Defendants' Motions, and because *Davila-Reyes* is not an intervening change in *controlling* law, I find no reason for the district court to reconsider its oral ruling denying Acosta Chiquito's Motion to Dismiss the Indictment for Lack of Jurisdiction (ECF No. 30). Accordingly, I recommend that the Motion for Reconsideration (ECF No. 69) be denied.

**III.    RECOMMENDATION**

Based on the foregoing, the undersigned **RECOMMENDS** that Defendant Agustin Suarez Chompol's Motion to Withdraw Plea and Dismiss Indictment (ECF No. 68), Defendant Julio Cesar Quinones Calzada's Motion to Withdraw Plea and Dismiss Indictment (ECF No. 73), and Defendant Jorge Santiago Acosta Chiquito's Motion for Reconsideration of Order Denying Motion to Dismiss the Indictment for Lack of Jurisdiction (ECF No. 69) be **DENIED**.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable K. Michael Moore, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida, this 29th day of August, 2022.

LAUREN LOUIS
UNITED STATES MAGISTRATE JUDGE

cc:    Honorable K. Michael Moore
       Counsel of Record